POSTED ON WEBSITE
NOT FOR PUBLICATION

FILED
JUN 1 8 2012
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In re | ) Case No. 11-38102-E-13 |
| | ) Docket Control No. CDN-4 |
| DAVID PAUL OBST, | ) |
| | ) |
| Debtor(s). | ) |
| | ) |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

Before the court is the Debtor's noticed motion to confirm a plan modified prior to confirmation pursuant to 11 U.S.C. § 1323. The Motion to Confirm the Plan was set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(1), General Order 05-03, Paragraph 8(a), and Federal Rule of Bankruptcy Procedure 2002(b).[1] The Chapter 13 Trustee filed opposition.

---

[1] The universe of interested parties in this case identified by the Debtor for service are limited to those relating to the disputed note and deed of trust, Federal National Mortgage Association, Indymac Mortgage Services, Mortgage Electronic Reg Systm, Inc., Mortgageit, Inc, OneWest Bank, FSB, and counsel for Federal National Mortgage Association; Bailey and Millington CPAs, the Chapter 13 Trustee, and the U.S. Trustee.

**RELIEF REQUESTED**

The Debtor has requested that the court confirm his Second Amended Chapter 13 Plan. The Motion first suffers from the failure to comply with one of the basic pleading requirements in this District – the motion, points and authorities, each declaration, and the exhibits are filed as separate pleadings. Local Bankruptcy Rule 9014-1(d)(1) and Revised Guidelines for Preparation of Documents. The court working in a near paperless environment, the merging of various pleadings and exhibits into one document create unnecessarily dense electronic documents for the court to navigate. For this contested matter counsel has chosen to create a "Mothoriteis," combining the motion and points and authorities into one document. Not following such a basic rule of pleading is grounds for denying the Motion. Local Bankruptcy Rule 9014-1(l).[2]

The Mothorities is comprised of two distinct parts: the motion and the points and authorities. For this contested matter, the court will consider the merits of the motion portion. Counsel should not be deluded into believing that compliance with the Local Bankruptcy Rules is optional and future failure to comply with result in the motion being denied without prejudice and without a hearing — affording counsel the opportunity to properly refile the motion.

---

[2] Counsel has also adopted a pleading strategy in which no paragraph number, headings, title, or other organization is provided to assist the Chapter 13 Trustee, U.S. Trustee, creditors, other parties in interest, and the court in considering the merits of the motion. The more difficult a party makes it for the court and parties in interest to understand the pleadings, the more difficult it is for the court, Trustee, and other parties in interest to fully understand the grounds and basis for the relief requested.

On November 7, 2011, the Debtor filed his Second Amended Plan. Under the plan the Debtor will make monthly plan payments of $124.00 to the Chapter 13 Trustee for a period of 60 months. The fees will be used to pay the administrative expenses of Debtor's counsel and the Chapter 13 Trustee, and $2,201.00 of general unsecured claims (100%). There are no Section VII additional provisions in this standard-form Chapter 13 Plan.

The Motion alleges that as of the effective date the creditors will be paid at least as much as they would through a Chapter 7 liquidation, with the plan payments totaling $7,440.00. The Motion also alleges that no secured claims are provided for in the Second Amended Plan, stating that "there are none filed." The Motion contains allegations for compliance with 11 U.S.C. § 1328.

In denying the prior motion to confirm the First Amended Plan, the court found that the Debtor had failed to provided evidence in support of confirmation, but instead merely had the Debtor purporting to make findings of fact and conclusions of law for the court to then to blindly parrot in its findings of fact and conclusions of law. Civ. Min., Dckt. 51. Further, that the Schedules I and J filed in this case did not support the Debtor's contention that he had projected disposable income to confirm the plan.

The declaration in support of the current motion has the Debtor testifying to actual facts, rather than merely conclusion, remedying many of the prior deficiencies, though still relying on some merely conclusions — such as saying, "I filed this in good faith," as opposed to testifying as to the facts upon which he seeks to have the court to conclude that the plan was proposed in

good faith.

**CREDITORS AND CLAIMS IN BANKRUPTCY CASE**

The Second Amended Chapter 13 Plan now presented to the court has no Class 1 Claims (claims secured by property of the debtor which mature after the completion of the plan with a pre-petition arrearage to be cured), no Class 2 Claims (secured claims that are modified by the plan or will mature before the completion of the plan), no Class 3 Claims (secured claims for which the collateral will be surrendered), no Class 4 Claims (claims which mature after the completion of the plan, not in default, and are not modified under the plan), no Class 5 Claims (unsecured priority claims), no Class 6 Claims (special unsecured claims to be paid in full, such as co-signed claims), and $2,001.00 of general unsecured claims which are to be paid a 100% dividend spread out over 60 months.

The Debtor is correct that no secured claims, or any claims for that matter have been filed in this case. What is excluded from the Second Amended Plan and the Debtor's disclosures in support of confirmation, that Federal National Mortgage Association ("FNMA") has filed a motion for relief from the automatic stay asserting that it purchased real property commonly known as 18630 Ogden Drive, Redding, California ("Ogden Drive Property"), at a nonjudicial foreclosure sale. FNMA alleged in the motion for relief from the automatic stay that it was proceeding with an unlawful detainer complaint in the California Superior Court for the County of Shasta which was set for a trial readiness hearing on July 18, 2011. The filing of this bankruptcy case on July 25, 2011, has stayed the state court unlawful detainer trial. Since it asserts that it owns the Ogden Drive Property, FNMA is not a

creditor of this Debtor.[3]

This court granted relief from the automatic stay on January 13, 2012, to allow FNMA and the Debtor to litigate the unlawful detainer issues in the proper state-court forum. Dckt. 50. That order was appealed by the Debtor, with no stay pending appeal issued by either the bankruptcy court or the

---

[3]/ The term creditor is defined in 11 U.S.C. § 101(10) which provides,

 (10) The term "creditor" means-

   (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
   (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title [11 USCS § 348(d), 502(f), 502(g), 502(h) or 502(i)]; or
   (C) entity that has a community claim.

The term claim is defined in 11 U.S.C. § 101 to be,

 (5) The term "claim" means--

   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

On its face, FNMA is asserting a claim to ownership of property which the Debtor also assert he owns. See Schedule A in which the Debtor lists the Ogden Drive Property as an asset he owns which is asserted not to be subject to any secured claims. Dckt. 14. On Schedule F filed by the Debtor on August 8, 2011, he listed a creditor identified as "Mortgageit Inc." as having a disputed claim in the amount of $279,665.00, and also listed OneWest Bank, FSB, Indymac Mortgage Services, and FNMA as having the same claim as Mortgageit, Inc. FNMA has not asserted any claim or that it is a creditor in this bankruptcy case.

5

appellate court.[4]

**Adversary Proceeding with FNMA**

The Debtor has also filed an adversary proceeding against FNMA, Bankr. E.D. Cal. No. 12-02039-E. In the Complaint, the Debtor alleges that he never owed money to FNMA, that FNMA did not have the right to purchase the Ogden Drive Property, that the Debtor executed a note which was secured by a deed of trust against the Ogden Drive Property, that the Debtor made all the payments on the note until it was transferred to someone by the original lender (MortgageIT), that a notice of default was signed by an unauthorized person for the beneficiary under the deed of trust, the notice of default was void, the assignment of the deed of trust was not executed by an authorized agent of the beneficiary, and that the trustee's sale under the deed of trust was invalid. The Debtor seeks this court to determine the respective legal rights of the Debtor and FNMA in the Ogden Drive Property.[5]

As referenced above, in Schedule A the Debtor lists the Ogden

---

[4]/ The Bankruptcy Appellate Panel of the Ninth Circuit dismissed the appeal for lack of prosecution on May 16, 2012. See B.A.P. 9th Cir. No. EC-12-1071 Dckt. 11.

[5]/ On its face, the Complaint alleges that rather than FNMA having purchased the Ogden Drive Property at a foreclosure sale, the Debtor still owns the property, which is encumbered by a deed of trust securing a promissory note for which the named payee is MortgageIt. No dispute is asserted as to this obligation or the deed of trust. The proposed Chapter 13 Plan does not address this obligation of the Debtor; the arrearage, if any, on that obligation, and the ongoing mortgage payments. As the parties should generally be aware, in a Chapter 13 case when a creditor cannot be found, the monies are delivered to the appropriate governmental entity, either deposited with the Treasurer of the United States (11 U.S.C. § 347 and 28 U.S.C. §§ 2041 et. seq.) or the California Controller (California Code of Civil Procedure §§ 1300 et. seq.), where such monies are held until the owner claims the funds or they eventually escheat to the governmental entity.

Drive Property as property in which he has a fee simple interest which has a value of $276,000.00. He states that the property is not subject to any liens. On Schedule D the Debtor states that he has no creditors with secured claims. FNMA and others are listed as a creditors having a disputed claim on Schedule F originally secured by the Ogden Drive Property. The only creditors holding unsecured claims are persons that the Debtor identifies as having claims relating to the note and deed of trust relating to the Ogden Drive Property. The Debtor lists his total income on Schedule I as $1,500.00, consisting of $1,250.00 from operation of a business and $250.00 from real property income. The Debtor lists $1,392.00 in monthly expenses (which includes $428.00 in business expenses) on Schedule J, which includes $253.00 for property taxes and $75.00 a month for property taxes. This results in a Monthly Net Income Calculation on Schedule J is 108.00. Dckt.14 at 16.

On September 12, 2011, the Debtor filed Amended Schedules B, F, I, and J. Schedule B was amended to add a lawsuit against FNMA as an asset of the estate. (The existence of the pending litigation was disclosed in the original Statement of Financial Affairs, Dckt. 14.) Amended Schedule F continues to list only creditors whose claims relate to the note and deed of trust relating to the Ogden Drive Property. Amended Schedules I and J contain the same information as the original Schedules, resulting in a Monthly Net Income calculation of $108.00. Dckt. 19 at 10.

On November 7, 2011, the Debtor filed Second Amended Schedules I and J. For Schedule I, the Debtor's income is increased to $1,650.00 a month. This occurs because the income from real property is increased to $400.00 a month. The Schedule J expenses

increase to $1,526.00, absorbing most of the stated increased real property income, resulting in a revised Monthly Net Income calculation of $124.00. Dckt. 31 at 5.

On February 1, 2012, the Debtor filed a Second Amended Schedule F, which added Bailey and Millinton, CPAs, with claims totaling $1,075.00 with unsecured claims for pre-partion of 2009 and 2010 tax returns. The Debtor fails to disclose when these debts were incurred. Dckt 64. No proof of claim has been filed by this listed creditor.

**PRIOR CHAPTER 7 CASE**

The Debtor filed his prior Chapter 7 case, Bankr. E.D. Cal. No. 10-32899-A-7 ("Chapter 7 Case") on May 17, 2010. The Chapter 7 Case was filed and prosecuted by the Debtor in *pro se*. Schedule D filed in the prior case only listed Deborah Sue Linden as a creditor having a claim secured by a Seaswirl boat. (Amended Schedule A added Scott Valley Bank as having a purchase money security interest in unidentified property. Chapter 7 Case Dckt. 16). Schedule F listed $1,385,950.77 in general unsecured claims. These unsecured claims included those for FNMA and other creditors identify to the note secured by the deed of trust given on the Ogden Drive Property, plus two credit cards totaling $17,29.89. (Amended Schedule F added an additional $21,228.10 claim for Chase Manhattan Bank.) Schedules, Chapter 7 Case Dckts. 15, 16. On his Statement of Intentions the Debtor stated that he claimed the property securing FNMA and other entities claims as exempt and intended to avoid their liens under 11 U.S.C. § 522(f). *Id.* (Amended Statement of Intention).

///

The Chapter 7 Trustee filed a Trustee's Report of No Distribution and the Debtor received his discharge on September 22, 2010. Chapter 7 Case Dckts. 16, 38. FNMA filed a motion for relief from the automatic stay in the Chapter 7 case to allow it to proceed with obtaining possession of the Ogden Drive Property. FNMA asserted that it had purchased the property at a nonjudicial foreclosure sale. The Debtor opposed that motion, asserting that FNMA did not have standing to bring the motion, does not exist, does not have a fictitious name, and that FNMA is the alter ego of OneWest Bank, FSB. The court granted the motion for relief from the automatic stay by order entered on August 27, 2012. Chapter 7 Case Dckts. 20, 26, 32, 34. After the court denied the Debtor's motion to vacate the order granting relief from the automatic stay the Chapter 7 Case was closed on November 12, 2011.

## CHAPTER 13 REHABILITATION CASES

At the heart of any Chapter 13 case is the requirement that the debtor provide regular monthly payments to creditors and using the Chapter 13 plan to rehabilitate his or her finances. Commonly, debtors use the Chapter 13 plan to cure an arrearage on a mortgage, maintain the operation of a sole proprietorship rather than having it liquidated to pay claims, valuing secured claims allowing them to be repaid for less than the full amount due, or repay tax obligations over a five-year period without penalty, and then discharging the balance of the unpaid unsecured debt.

Chapter 13 of the Bankruptcy Code is titled "Adjustment of Debts of an Individual With Regular Income." While title of a legislative enactment is not determinative, this title is descriptive of a Chapter 13 case — restructuring of finances and

payment of debts, rather then just liquidating the assets of the debtor. In seeking to confirm a Chapter 13 Plan a debtor must meet the requirements of 11 U.S.C. § 1325, which include,

1. The plan has been proposed in good faith; and

2. The action of the debtor in filing the bankruptcy petition is in good faith.

11 U.S.C. § 1325(a)(3) and (4).

The term "good faith" is not defined under the Bankruptcy Code. Considering each case includes an inquiry as to whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. *Goeb v. Heid (In re Goeb)*, 675 F. 2d 1386, 1389-1390 (9th Cir. 1982); *In re Norwood,* 178 B.R. 683, 688 (Bankr. E.D. Pa 1995). Factors identified by the Bankruptcy Appellate Panel of the Ninth Circuit were stated to include, and are not limited to,

1. The amount of the proposed payments and the amounts of the debtor's surplus;

2. The debtor's employment history, ability to earn, and likelihood of future increases in income;

3. The probable or expected duration of the plan;

4. The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5. The extent of preferential treatment between classes of creditors;

6. The extent to which secured claims are modified;

7. The type of debt sought to be discharged, and whether any such debt is dischargeable in Chapter 7;

8. The existence of special circumstances such as inordinate

medical expenses;

9. The frequency with which the debtor has sought relief under the Bankruptcy Code;

10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11. The burden which the plan's administration would place upon the trustee.

*Villanueva v. Dowll* (In re Villeanueva), 274 B.R. 836, 842 (B.A.P. 9th Cir. 2002). This determination is made on a case-by-case basis, with the court taking into account the totality of the circumstances. *Goeb*, 675 F. 2d at 1390-1391; *In re Metz*, 67 B.R. 462, 462 (B.A.P. 9th Cir. 1986).

**Consideration of Debtor's Good Faith**

In this case, the Debtor has no creditors other than the group of "creditors" who are identified as having disputed claims under the note and deed of trust. The Debtor has taken the attack to those "creditors" in the Adversary Proceeding seeking to have a determination of their interest in the property (attacking FNMA's asserted interests in the Ogden Drive Property). The Debtor asserts that he does not owe any money to these "creditors." In the Complaint filed by the Debtor, he asserts that he executed a note for monies borrowed and granted a deed of trust to secure that obligation. Complaint ¶¶ 9, 10, 11, 12. However, no secured claim is listed in the Schedules, which indicates that the Debtor believes that the note either has been paid or is no longer enforceable.

This Chapter 13 case was filed before the state court could proceed with an unlawful detainer trial in which the Debtor could

11

assert his alleged superior right to possession of this Property. Other than paying the Debtor's attorney for filing this case and the Chapter 13 Trustee, no meaningful creditor claims are being paid. The two claims belatedly identified in this case are for the Debtor's CPA, which total $1,075.00. The existence of these claims was not brought to the attention of the court until the February 2, 2012 amendment to Schedule F (which also deletes the disputed claims listed for the FNMA-related note creditors). This was seven months after the bankruptcy case was filed and strains credibility that if these were the only two pre-petition debts were the only debts, the Debtor did not know about them until February 2012. Further, it appears that these two debts are presented to manufacture a "reason" for this Debtor to be in bankruptcy.

If the Debtor actually owes only $1,075.00 for these two unsecured debts, then filing the Chapter 13 case was a horrific error. To file this bankruptcy case the Debtor paid his attorney $1,226.00 in fees before the commencement of the case and has obligated himself to pay an additional $2,774.00 of attorneys' fees, in addition to Chapter 13 Trustee fees. On top of that, the Debtor had to pay a $281.00 Chapter 13 filing fee. Assuming 6% Chapter 13 Trustee fees, the total cost of paying the $1,075.00 pre-petition debts to the CPAs totals $5,147.36. On its face, seeking relief under Chapter 13 causes the Debtor to lose ($4,072.36).

Given that the Debtor has fought FNMA obtaining relief from the automatic stay both in the Chapter 7 case and Chapter 13 case, and filed the Chapter 13 case when the state court unlawful detainer was being set for trial, the court concludes that the

Chapter 13 case exists for some other reason to warrant the ($4,072.36) negative economic consequences.

Rather than attempting to restructure his finances and provide for paying creditor claims, the Debtor was seeking to buy an injunction for the ($4,072.36) to prevent FNMA from having its rights litigated in the appropriate state court forum. The court has extensively discussed the Debtor's contentions that FNMA does not have the right to assert an interest in the Ogden Drive Property in denying the motion for stay pending appeal of the order granting relief from the automatic stay. Civ. Min., Dkct. 75. The Debtor's contentions do not arise under the Bankruptcy Code or impact the bankruptcy case.

The Chapter 13 case works to the significant detriment of the one creditor which the Debtor asserts could have a claim in this case. As of March 26, 2012, no proof of claim has been filed by the Debtor's CPAs. The proof of claim deadline in this case was December 7, 2011. There is no such claim to pay in this Chapter 13 case.

This Chapter 13 case has been filed and the plan proposed merely as a canard for obtaining a stay preventing FNMA from having a court of competent jurisdiction ruling on its interest. If the Debtor sought to stay FNMA outside of the automatic stay in a bankruptcy case, he would have been required to post a bond under either California Code of Civil Procedure 529(a) or Federal Rule of Civil Procedure 62(c), which is also applicable to adversary proceedings in this court.

In appropriate cases, this court allows debtors operating under a plan to self-fund a bond by making payments into a blocked

account or the Chapter 13 Trustee in cases where there is an alleged invalid foreclosure or dispute as to the identity of the Trustee. If the foreclosure is invalid, then there is a secured claim to be paid to the creditor. If the foreclosure is valid, then a fund exists for payment of the Rule 65(c) damages. Fed. R. Civ. P. 65(c).

No reason exists for this bankruptcy case except as an excuse to obtain an (automatic) injunction for which the Debtor would not have to make the normal minimal showing required under Federal Rule of Civil Procedure 65. While such may be warranted when the automatic stay pursuant to 11 U.S.C. § 362(a) works to advance the bankruptcy case and further the goals of the Bankruptcy Code, it is not warranted when it is a contrived device to circumvent the requirements for an injunction under Federal Rule of Civil Procedure 65.

No creditors are to be paid in this bankruptcy case. Even if the CPAs had filed timely claims, the filing of the bankruptcy case causes them to be paid on their claims over five years, with payments beginning after Debtor's counsel gets paid. The Debtor actually had the money to pay the CPAs in full, to the extent that any debt was actually owing, but instead expended more than that to file this bankruptcy case.

This Chapter 13 Plan has not been proposed in good faith. The filing of the bankruptcy case itself was not in good faith. There was no intention to receive any of the benefits or achieve any of the goals which properly arise under the Bankruptcy Code. Rather, the Debtor seeks to abuse the Bankruptcy Code and make this court an unwilling aider and abetter in deterring the state court from

properly addressing cases before it.

## CHAPTER 13 TRUSTEE'S OBJECTION

The Chapter 13 Trustee questions whether the additional rent income of $400.00 a month upon which the Plan depends is reliable income. Since the real property which generates this income is the subject of the unlawful detainer proceeding, for which relief from the stay has been granted FNMA, such income could abruptly terminate. The Trustee suggests that the court either deny the motion or continue the hearing for an indefinite time until the appeal is decided.

The court does not believe that merely allowing this case to linger without a bona fide, good-faith plan is proper under the Bankruptcy Code.

## FAILURE TO COMPLY WITH ORDER FOR FURTHER BRIEFING

In his declaration and the points and authorities portion of the "Mothorities" the Debtor has not addressed the specific good-faith issues identified in this tentative ruling. The court continued the hearing and ordered the Debtor to file supplemental pleadings to address this issue on or before April 10, 2012. No supplemental pleadings have been filed and the Debtor has elected not to take advantage of the additional time to address this specific issue.

Debtor's election not to make any effort to address this serious issue and demonstrate the basic requirement that he has filed this case and is proposing the plan in good faith to be further evidence that this bankruptcy case is a mere sham to try and invoke the special federal court bankruptcy jurisdiction for no proper purpose under 28 U.S.C. § 1334 and the Bankruptcy Code. At

the heart of this case is that the Debtor disputes that a nonjudicial foreclosure sale was properly conducted and wants to litigate that state law issue with FNMA.

The corollary to there not having been a foreclosure sale conducted is that the Debtor stills owns the property, subject to a deed of trust securing a note for which he owes money to MortgageIt or MortgageIt's successor. The Debtor seeks to have a Chapter 13 Plan which does not provide for paying that secured claim, and which provides to pay purported creditors for which no claims have been filed. Even if claims were filed, by virtue of the Chapter 13 Plan, those creditors are going to receive minuscule payments over a period of five years, when the Debtor had and has the money to pay them in full immediately.

The financial consequences of the Second Amended Chapter 13 Plan further demonstrates that it is merely a canard to waste federal judicial resources in an effort to forum shop. The state-law dispute could be properly addressed in the California Superior Court, the state trial court of general jurisdiction. By choosing to commence this Chapter 13 case, the Debtor is incurring obligations which are twice the amount of unsecured claims which he asserts he owes (for which no creditors have come forward to file proofs of claim, with a claims bar date of December 7, 2011 in this case).

The determination of the adversary proceeding will not have any impact on this bankruptcy case. The Ogden Drive Property is not subject to any provisions of the Second Amended Plan; no plan provisions provide for treatment of this property or any claims secured by the Ogden Drive Property.

The court finds that the proposed Chapter 13 Plan does not comply with 11 U.S.C. § 1325 and is not confirmed.  The motion is denied.

Dated: June 18, 2012

RONALD H. SARGIS, Judge
United States Bankruptcy Court

Case 11-38102    Filed 06/18/12    Doc 99

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that the attached document(s) was served by mail to the following entities listed at the address(es) shown below:

Service List:

David Cusick
PO Box 1858
Sacramento, CA 95812-1858

Clark Nicholas
448 Redcliff Dr #226
Redding, CA 96002

David Obst
18630 Ogden Dr
Redding, CA 96003

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

DATE: 6-19-12

Kanee Vang
Deputy Clerk